1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LEON E. SULLIVAN,                          No.  2:13-cv-1460-KJN

12                   Plaintiff,

13         v.                                    ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                     Defendant.
16

17         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18  ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

19  under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment,

20  plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

21  disabled from March 3, 2010, the date that plaintiff's application was filed, through the date of

22  the ALJ's decision.  (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's motion

23  and a cross-motion for summary judgment.  (ECF No. 17.)  No optional reply brief was filed by

24  plaintiff.

25  ////

26

27  _____

    [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
    both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28  purposes.  (ECF Nos. 7, 9.)

                                                1

1    For the reasons discussed below, the court DENIES plaintiff's motion for summary

2   judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters

3   judgment for the Commissioner.

4   I.    BACKGROUND

5    Plaintiff was born on October 19, 1962, has a limited education, is able to communicate in

6   English, and has no past relevant work.[2]  (Administrative Transcript ("AT") 18, 27-29, 46, 50,

7   128.)  On March 3, 2010, plaintiff applied for SSI, alleging that he was unable to work as of

8   January 1, 1992, due to back pain, diabetes, high blood pressure, and hepatitis C.  (AT 11, 122,

9   127.)[3]  On July 13, 2010, the Commissioner determined that plaintiff was not disabled.  (AT 11,

10   52-56.)  Upon plaintiff's request for reconsideration, that determination was affirmed on

11   September 14, 2010.  (AT 11, 60-66.)  Thereafter, plaintiff requested a hearing before an

12   administrative law judge ("ALJ"), which ultimately took place on August 2, 2011, and at which

13   plaintiff, represented by a non-attorney representative, testified.  (AT 11, 24-45.)

14    In a decision dated November 25, 2011, the ALJ determined that plaintiff had not been

15   under a disability, as defined in the Act, from March 3, 2010, the date that plaintiff's application

16   was filed, through the date of the ALJ's decision.  (AT 11-20.)  The ALJ's decision became the

17   final decision of the Commissioner when the Appeals Council denied plaintiff's request for

18   review on May 25, 2013.  (AT 2-5.)  Thereafter, plaintiff filed this action in federal district court

19   on July 19, 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

20   II.    ISSUES PRESENTED

21    Plaintiff has raised the sole issue of whether the ALJ improperly rejected the opinion of

22   consultative examining psychologist, Dr. Robin Campbell.[4]

23   _____

24   [2] Because the parties are familiar with the factual background of this case, including plaintiff's
   medical history, the court does not exhaustively relate those facts in this order.  The facts related
25   to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues
   presented by the parties' respective motions.

26   [3] Regardless of the alleged disability onset date, SSI is not payable prior to the month following
27   the month in which the application was filed.  20 C.F.R. § 416.335.

28   [4] In the preliminary statement portion of plaintiff's motion for summary judgment, plaintiff also

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[5] At the first step, the ALJ concluded that plaintiff had not

---

states, in passing, that the ALJ failed to properly consider plaintiff's testimony. (ECF No. 16 at 3.) However, because plaintiff's brief provides no substantive argument and legal authorities in that regard, any such issue is waived. See Officers for Justice v. Civil Serv. Comm'n of San Francisco, 979 F.2d 721, 726 (9th Cir. 1992) ("We will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.").

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

3

1    engaged in substantial gainful activity since March 3, 2010, the date that plaintiff's SSI

2    application was filed.  (AT 13.)  At step two, the ALJ determined that plaintiff had the following

3    severe impairments: degenerative disc disease of the lumbar spine, osteopenia and spurring of the

4    thoracic spine, aortic stenosis, diabetes mellitus, hypertension, hepatitis C, obesity, depressive

5    disorder, anxiety disorder, and cannabis dependence.  (Id.)  However, at step three, the ALJ

6    determined that plaintiff did not have an impairment or combination of impairments that met or

7    medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

8    Appendix 1.  (AT 14.)

9          Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

10   ("RFC") as follows:

11             After careful consideration of the entire record, the undersigned
              finds that the claimant has the residual functional capacity to
12            perform light work as defined in 20 CFR 416.967(b) except: he
              could lift, carry, push and/or pull 20 pounds occasionally and 10
13            pounds frequently; he could stand and/or walk for about 6 hours in
              an 8-hour workday; he could sit for about 6 hours in an 8-hour
14            workday; he could frequently perform postural activities, except
              that he could occasionally climb ladders, ropes, and scaffolds; he is
15            unable to work at heights or around heavy machinery; and he is
              limited to performing simple, unskilled work involving no frequent
16            contact with the public or coworkers.

17   (AT 16.)

18   ////

19   _____

20             Step three: Does the claimant's impairment or combination of impairments meet or
              equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
21            claimant is automatically determined disabled.  If not, proceed to step four.

22            Step four:  Is the claimant capable of performing his past relevant work?  If so, the
23            claimant is not disabled.  If not, proceed to step five.

24            Step five:  Does the claimant have the residual functional capacity to perform any
              other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
25

26   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27            The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28   evaluation process proceeds to step five.  Id.

1    At step four, the ALJ found that plaintiff had no past relevant work.  (AT 18.)  Finally, at

2    step five, the ALJ determined that, considering plaintiff's age, education, work experience, and

3    RFC, there were jobs that existed in significant numbers in the national economy that plaintiff

4    could perform.  (AT 19.)

5    Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

6    in the Act, from March 3, 2010, the date that plaintiff's SSI application was filed, through the

7    date of the ALJ's decision.  (AT 19.)

8         B.     <u>Plaintiff's Substantive Challenge to the Commissioner's Determinations</u>

9    Plaintiff contends that the ALJ improperly rejected certain portions of the May 20, 2010

10   opinion of consultative examining psychologist, Dr. Robin Campbell.  That argument is

11   unpersuasive.

12   The weight given to medical opinions depends in part on whether they are proffered by

13   treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246 F.3d 1195,

14   1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

15   weight is given to the opinion of a treating professional, who has a greater opportunity to know

16   and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir.

17   1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18   considering its source, the court considers whether (1) contradictory opinions are in the record;

19   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

20   treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u>, 81

21   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

22   rejected for "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  The opinion of a non-

23   examining professional, without other evidence, is insufficient to reject the opinion of a treating

24   or examining professional.  <u>Lester</u>, 81 F.3d at 831.

25   In this case, the ALJ properly gave little weight to the portion of Dr. Campbell's opinion

26   that plaintiff had "moderate to marked difficulty in relating appropriately to the public,

27   supervisors, and co-workers due to mood instability" and that plaintiff's "ability to withstand the

28   stress and changes associated with an eight-hour workday and day-to-day work activities [was]

5

moderately impaired." (AT 214.)  As the ALJ recognized, Dr. Campbell diagnosed plaintiff with an anxiety disorder not otherwise specified, cannabis dependence, and malingering, explaining that the results from psychological testing performed during the evaluation were "not considered to be a reasonably accurate presentation of the claimant's cognitive and psychological functioning given his very poor effort." (AT 18, 211, 213.)  Thus, Dr. Campbell herself seriously questioned the validity of her assessment given plaintiff's poor effort and malingering.  (AT 214 ["The findings are limited by the validity of the test results, observations, review of records and interaction with the claimant…."].)[6]

Furthermore, even assuming *arguendo* that Dr. Campbell endorsed the social functioning and stress limitations without reservation, they were unsupported by Dr. Campbell's own findings.  Notably, although Dr. Campbell found plaintiff to have impaired insight and judgment, and some impairment in social and common sense understanding, she also noted plaintiff to have fair hygiene, normal alertness and orientation, normal psychomotor activity, normal speech and language, normal affect, normal thought processes and thought content, no memory impairment, no obvious cognitive delays, no attention deficits, adequate concentration, and a fair fund of knowledge during the mental status examination.  (AT 210-11.)  As the ALJ observed, Dr. Campbell apparently based the assessed social functioning and stress limitations on plaintiff's "mood instability."  (AT 18, 214.)  However, Dr. Campbell provided no explanation, and made no specific findings, regarding mood instability, other than noting plaintiff's own subjective statement that his mood was "not good."  (AT 210.)  Plaintiff's subjective reports alone cannot support the mental limitations at issue, especially given Dr. Campbell's diagnosis of malingering.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that an ALJ may reject a medical source's opinion if it was based to a large extent on the claimant's self-reports that have

---

[6] Plaintiff argues that Dr. Campbell "made clear" that plaintiff's poor effort during the evaluation was a manifestation of his mental impairments.  (ECF No. 16 at 7.)  However, that argument lacks any support in the record.  Even though Dr. Campbell found that plaintiff had impaired insight and judgment, and some impairment in social and common sense understanding, Dr. Campbell never attributed plaintiff's poor effort during the evaluation to his mental impairments.  Instead, she diagnosed plaintiff with malingering.  (AT 213.)  That diagnosis is entirely inconsistent with the interpretation of Dr. Campbell's report suggested by plaintiff.

1    been properly discounted as incredible).

2          Finally, the ALJ's decision to discount the social functioning and stress limitations in Dr.

3    Campbell's report is further bolstered by the opinions of the state agency psychiatrists, who, after

4    reviewing plaintiff's records, both concluded that there was insufficient evidence of a mental

5    impairment.  (AT 215, 260.)  Additionally, even though treatment notes by plaintiff's primary

6    care providers sometimes referenced pressured speech and a possible mood disorder, the notes

7    frequently reflected that plaintiff had a stable mood, normal affect, normal thought content, and

8    appropriate speech.  (AT 17, 173, 178, 180, 241, 267, 281.)

9          Therefore, the ALJ provided specific and legitimate reasons to reject the more severe

10   social functioning and stress limitations contained in Dr. Campbell's report.  Contrary to

11   plaintiff's argument, the ALJ did not improperly substitute his lay opinion for Dr. Campbell's

12   opinion.  It is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*,

13   and thus the RFC need not exactly match the opinion or findings of any particular medical source.

14   See Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with

15   everything an expert witness says in order to hold that his testimony contains substantial

16   evidence"); De Fletes v. Colvin, 2013 WL 1345724, at **2-5 (N.D. Cal. Mar. 31, 2013); Ceballos

17   v. Astrue, 2011 WL 3847141, at *8 (E.D. Cal. Aug. 30, 2011).  Here, the ALJ considered and

18   weighed the conflicting evidence in the record, and ultimately imposed some social functioning

19   limitations – limiting plaintiff to simple, unskilled work involving no frequent contact with the

20   public or coworkers.  (AT 16.)  Those social limitations appear reasonable given that plaintiff

21   stated that he ran errands, shopped, rode the bus, went to the park, at times lived in a homeless

22   mission, went to the movies, visited the library, and sometimes socialized with acquaintances.

23   (AT 30, 32, 210.)  Moreover, even if this court could have evaluated the evidence differently, the

24   court defers, as it must, to the ALJ's reasonable and rational resolution of any ambiguities and

25   inconsistencies.

26   ////

27   ////

28   ////

1  V.      CONCLUSION

2          For the foregoing reasons, the court finds that the ALJ's decision was free from

3  prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT

4  IS HEREBY ORDERED that:

5          1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied.

6          2.  The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted.

7          3.  Judgment is entered for the Commissioner.

8          4.  The Clerk of Court shall close this case.

9          IT IS SO ORDERED.

10  Dated:  November 24, 2014

11

12                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28